UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIVAS L. STEWART,

                Plaintiff,                    CIVIL ACTION NO. 17-cv-11528

            v.                       DISTRICT JUDGE THOMAS L. LUDINGTON

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                Defendant.
_____/

REPORT AND RECOMMENDATION

      Plaintiff Rivas L. Stewart seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 18) and Defendant's Motion for Summary Judgment (docket no. 21).  This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

      For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 18) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 21) be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on March 3, 2014, alleging that he has been disabled since November 16, 2008, due to schizophrenia; bipolar disorder; diabetes; gun shot wounds in his neck, back, right shoulder, and stomach; and the fact that he has only one kidney.  (TR 104, 156-64, 180.)  The Social Security Administration denied Plaintiff's claims on July 18, 2014, and Plaintiff requested a *de novo* hearing.  (TR 92-104, 110-12.)  On February 9, 2016, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Stephen Marchioro.  (TR 41-91.)  At the hearing, Plaintiff amended his alleged onset date to the application date of March 3, 2014.  (TR 46.)  The ALJ issued an unfavorable decision on March 9, 2016, and the Appeals Council declined to review the decision.  (TR 1-6, 19-32.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 18 at 9-10), Defendant (docket no. 21 at 6), and the ALJ (TR 25-29, 31) have set forth factual summaries of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of March 3, 2014, and that Plaintiff suffered from the severe impairments of

depression with psychotic features, schizophrenia, and fracture of right clavicle status-post gunshot

wound. (TR 21.) The ALJ also found that Plaintiff's obesity, diabetes mellitus, hyperlipidemia,

hypertension, and asthma were non-severe impairments. (TR 21-22.) Additionally, the ALJ found

that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 22-24.) The ALJ then found that Plaintiff had

the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except he is able to push or pull with the right upper extremity
> frequently. The claimant is able to climb ladders, ropes, or scaffolds occasionally.
> He is able to reach overhead with his right upper extremity occasionally. The
> claimant must avoid all use of unguarded moving mechanical parts and all exposure
> to unprotected heights. The claimant is limited to performing simple, routine,
> repetitive tasks involving only simple work-related decision making and only
> occasional changes in the work place. The claimant is limited to work where there
> is little to no contact with the public and minimal, superficial contact with
> coworkers. He is limited to occasional contact with supervisors.

(TR 25-29.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff

was capable of performing a significant number of jobs in the national economy. (TR 31-32.)

Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time

since March 3, 2014, the date the application was filed. (TR 19, 32.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions. Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal

standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d

525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

4

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant
past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past
work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past
work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be
deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on
"the fifth step, proving that there is work available in the economy that the claimant can perform."
*Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by
substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."
*Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial
evidence" may be in the form of vocational expert testimony in response to a hypothetical question,
"but only 'if the question accurately portrays [the claimant's] individual physical and mental
impairments.'"  *Id.* (citations omitted).

C.     **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in
conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]
(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material
evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six
remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing
42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the
pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of
the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).
Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four for eight reasons: (1) the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinions of Plaintiff's treating physicians; (2) the ALJ failed to comply with Social Security Ruling (SSR) 96-7p by discrediting Plaintiff for his failure to obtain treatment without first considering Plaintiff's explanations therefor; (3) the ALJ did not properly consider the consultative examiner's opinion;[1] (4) The ALJ failed to assess Plaintiff's mental RFC in accordance with SSR 96-8p and SSR 85-15; (5) the ALJ failed to discuss or consider the side effects of Plaintiff's medication; (6) the ALJ failed to provide legitimate reasons for rejecting the lay opinion evidence; (7) the ALJ violated SSR 96-8p by failing to consider the effect of Plaintiff's depression and bipolar disorder; and (8) the substantial evidence of record does not support a finding that Plaintiff can perform sustained work activities. (Docket no. 18 at 3-4, 6-7, 12-28.)

### 1.    The ALJ's Assessment of Plaintiff's Treating Physicians' Opinions

Plaintiff argues that "[c]ontrary to proper protocol, the ALJ minimized the opinion of Mr. Plaintiff's treating psychologists and therapists." (Docket no. 18 at 13.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in

---

[1] Plaintiff frames the third issue as one in which the ALJ failed to comply with SSR 96-6p by ignoring the opinion of the non-examining state-agency physician and failing to provide adequate reasons for rejecting it. (Docket no. 18 at 3, 6, 17-18.) But the substance of Plaintiff's argument challenges the ALJ's assessment of the consultative examiner's opinion, not the opinion of the state-agency physician. Thus, SSR 96-6p does not apply here.

light of several factors:  (1) length of the treatment relationship and the frequency of examination;

(2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency

of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other

factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Plaintiff's treating physicians have offered little in the form of opinion evidence, except

for the Global Assessment of Functioning (GAF) score of 45 assessed by Mohammad Jafferany,

M.D.  (TR 347.)  The ALJ acknowledged and assessed the GAF score as follows:

> In December 2014, Dr. Jafferany noted a global assessment of functioning (GAF)
> score of 45, which indicates serious symptoms.  (Exhibit 7F).  The GAF is a
> numeric scale whereby physicians subjectively range the social, occupational, and
> psychological functioning of a person (Diagnostic and Statistical Manual of Mental
> Disorders IV-TR (2000) (DSM IV)).  Further, the GAF score is not a predictor of
> future functioning, but only a subjective indicator based upon the observer's
> opinion of how the claimant was functioning on one particular day.  Therefore, the
> undersigned assigns little weight to Dr. Jafferany's GAF assessment.

(TR 26-27.)

Plaintiff argues that the ALJ should have assigned much greater weight to the GAF score.

However, neither the Commissioner nor the Sixth Circuit requires the Commissioner to give GAF

scores any weight, and the Commissioner has in fact '"declined to endorse the [GAF] score for

use in the Social Security and [Supplemental Security Income] disability programs."'  *Lee v.*

*Comm'r of Soc. Sec.*, 529 F. App'x 706, 716 (6th Cir. 2013) (quoting *DeBoard v. Comm'r of Soc.*

*Sec.,* 211 F. App'x 411, 415 (6th Cir. 2006).  Thus, the ALJ was under no obligation to credit the

GAF score assessed by Dr. Jafferany, and the little weight that he did assign to it is not erroneous.

Plaintiff also argues that the ALJ completely ignored the medical evidence provided by

Archana Nagarajan, M.D. of Gamez Community Health Center.  (Docket no. 18 at 14.)  Plaintiff

is blatantly incorrect in this regard, as the ALJ cited the evidence provided by Dr. Nagarajan

throughout the decision.  Specifically, the ALJ cited Dr. Nagarajan's treatment records in

discussing Plaintiff's diabetes (TR 22), in noting that Plaintiff's mental status examination was normal in October 2014 (TR 26), in finding that the opinion of Dr. Jones-Smith was consistent with the record evidence (TR 28), and in discounting Plaintiff's sisters' opinions (TR 29).

Additionally, Plaintiff argues that the ALJ committed reversible error by failing to re-contact Dr. Nagarajan for further details of Plaintiff's upper extremity pain and limitations. (Docket no. 18 at 14.)  In support of this argument, Plaintiff cites 20 C.F.R. § 404.1512(e), a regulation that applies only to Old-Age, Survivors and Disability Insurance applications, and not to Supplemental Security Income (SSI) applications, such as Plaintiff's.  The corresponding SSI regulation is 20 C.F.R. § 416.912.  A prior version of that regulation provided that the Commissioner "will seek additional evidence or clarification from [a claimant's] medical source" under certain circumstances, including "when the report from [the claimant's] medical source . . . does not contain all the necessary information." *See* 20 C.F.R. § 416.912(e)(1) (76 F.R. 24810, version effective June 13, 2011 to March 25, 2012).  The regulation (20 C.F.R. § 416.912) has since been amended, however, and the current version no longer contains a provision that requires an ALJ to re-contact a medical source; neither did the version in effect at the time of Plaintiff's application on March 3, 2014 (*see* 77 F.R. 10656), or the version in effect at the time of the ALJ's decision on March 9, 2016 (*see* 80 F.R. 14837).  The undersigned previously recommended the rejection of a substantially similar argument advanced by Plaintiff's counsel in another case on the same basis, yet Plaintiff's counsel inexplicably continues to advance this frivolous argument.

As Defendant points out, an ALJ's decision to re-contact a medical source is now a matter of the ALJ's discretion under the current regulations.  (*See* docket no. 21 at 26 (citing 20 C.F.R. § 416.920b; *Hollis v. Comm'r of Soc. Sec.*, No. 13-13054, 2015 WL 357133, at \*23 (E.D. Mich. Jan. 27, 2015)).)  Plaintiff asserts that the ALJ should have re-contacted Dr. Nagarajan to get additional

details regarding Plaintiff's upper extremity pain and limitations.  But the ALJ received significant information from Drs. Sankaran and Blum regarding the same, and Plaintiff has provided no argument regarding the insufficiency of that evidence.  Plaintiff has provided no substantive basis on which the ALJ should have re-contacted Dr. Nagarajan in this matter.  Plaintiff's argument should therefore be rejected.

 2. *The ALJ's Consideration of Plaintiff's Failure to Obtain Treatment*

Plaintiff argues that the ALJ failed to comply with SSR 96-7p by discrediting Plaintiff for his failure to obtain treatment without first considering his explanations for the lack of treatment.  (Docket no. 18 at 15-17.)  SSR 96-7p states that an ALJ may find a claimant's statements to be "less credible if the level or frequency of treatment is inconsistent with the level of complaints" as long as the ALJ considers the claimant's explanations or other evidence explaining his infrequent or irregular medical visits or failure to seek medical treatment.  SSR 96-7p, 1996 WL 374186, at *7.  Here, in his only statement related to the frequency of Plaintiff's treatment, the ALJ stated, "[t]he record regarding the claimant's severe mental impairments is sparse because the claimant seeks mental health treatment infrequently."  (TR 26.)  The ALJ made this statement at the beginning of his discussion regarding Plaintiff's mental health record.  In fact, immediately following this statement, the ALJ began to summarize Plaintiff's consultative psychological examination with Donovan Royal, Psy.D.  As Defendant argues, there is no evidence in the decision that the ALJ discounted Plaintiff's subjective complaints based on the frequency of his mental health appointments.  (*See* docket no. 21 at 13-14.)  Without sufficient evidence that the ALJ discredited Plaintiff for his failure to obtain frequent mental health treatment, the requirements of SSR 96-7p do not apply.  Plaintiff's Motion should be denied with respect to this issue.

9

3.      *The ALJ's Assessment of the Consultative Examiner's Opinion*

Plaintiff challenges the ALJ's assessment of the opinion of the consultative examiner, Donovan Royal, Psy.D., L.P.  (Docket no. 18 at 17-18.)  Dr. Royal performed an independent consultative psychological examination of Plaintiff on July 3, 2014.  (TR 293-97.)  The ALJ summarized Dr. Royal's examination and assessed his opinion as follows:

> In July 2014, Donovan Royal, Psy.D., a licensed psychologist, saw the claimant for a psychological consultative examination.  (Exhibit 4F).  At that time, the claimant was not taking any psychotropic medications.  Dr. Royal observed the claimant to be suspicious and not relaxed or comfortable.  Dr. Royal also noted acute anxiety, restlessness, and suspicion.  He noted that the claimant's contact with reality was questionable and unreliable.  Dr. Royal observed that the claimant's speech and train of thought was frequently halted due to being distracted by his environment. The claimant was difficult to refocus and Dr. Royal reported that very likely the claimant was engaging in delusional thinking that caused him to become anxious and mistrusting.  The claimant's mood was depressed, paranoid, and hypervigilant. Dr. Royal also noted the claimant to be anxious and suspicious.  Dr. Royal diagnosed the claimant with major depressive disorder with psychotic features. (*Id*.)
>
> Dr. Royal noted that the claimant presented in a state of cautiousness and hypervigilance.  Dr. Royal observed the claimant to be bothered by office noise and he continuously looked out the window.  Dr. Royal stated that without intervention, the claimant's level of depression would likely worsen.  The doctor stated his paranoid affect and delusion thought content would likely worsen.  Dr. Royal also noted that, with the claimant's history of three arrests for carrying a concealed weapon, the doctor thought that the claimant had the potential to "become highly dangerous."  (*Id*.)  Further, Dr. Royal noted that the claimant would be unable to manage funds if disability benefits were awarded.  (*Id*.)
>
> Dr. Royal's conclusions that the claimant has the potential to become highly dangerous and the claimant is incapable of handling funds is inconsistent with Dr. Jafferany's notes which indicates that the claimant's symptoms become quite mild when the claimant's [sic] is compliant with medications (Exhibit 7F).  Dr. Royal noted that the claimant was not taking any medications at the time of his July 2014 examination.    Therefore, Dr. Royal's conclusions regarding the claimant's functioning is skewed because the doctor did not have an opportunity to examine the claimant's functioning when he is compliant with medications.  Therefore, the undersigned assigns only some weight to Dr. Royal's findings and conclusions.

(TR 26.)

Plaintiff challenges the ALJ's finding that Dr. Royal's conclusions were skewed because Dr. Royal did not have an opportunity to examine Plaintiff when he was compliant with his medications.  (Docket no. 18 at 18.)  Plaintiff argues that Dr. Jafferany's treatment records, his sister's testimony, and his behavior at the hearing demonstrate that his behavior is similar to that observed by Dr. Royal even when he is compliant with his medications.  (*Id.* (citing TR 57, 64-65, 76, 344).)

The hearing testimony cited by Plaintiff does reflect his erratic behavior at the hearing; for example, Plaintiff got up and randomly left the room during the hearing.  (TR 64.)  However, the testimony also reveals that Plaintiff was not necessarily compliant with his medications at that time:

Q  Okay.  And are you taking any kind of mental health medication currently?

A  Supposed to.

Q  Well, are you or not?

A  Sometimes.

Q  Okay.  And what is it that you're taking, do you know the name of it?

A  No.

Q  Okay.  But you don't take medication every day?

A  My sister force me, yeah.

Q  Okay.

(TR 64.)  The portion of Plaintiff's sister's testimony to which he cites doesn't support Plaintiff's argument either.  (*See* TR 76.)  There, the ALJ asked Plaintiff's sister, Constance Coates, whether Plaintiff's behavior is better or worse when he takes his medicines.  She testified that when he takes his medications, "he sleeps all the time.  He sits and goes to sleep, you know?  And when

you get up, he confused and don't know why, what, and he ain't taking whatever it was anymore."
She testified that when Plaintiff doesn't take his medications, "he walks all day and all night, sit
down for a few minutes.  I think he sleep.  He up walking and, you know, all night."  She further
testified that after Plaintiff's doctor adjusted his medications, he no longer slept all day, but he did
still sit down at night.  (TR 77.)  Thus, Plaintiff's sister expressly testified that Plaintiff's paranoid
and delusional behavior improved when he was compliant with his medications.

Plaintiff also cites Dr. Jafferany's December 31, 2014 treatment note to support his
contention that he still exhibited poor mental behavior despite his compliance with medications.
(TR 344.)  This was Plaintiff's first follow-up appointment with Dr. Jafferany after his initial
evaluation on December 3, 2014, so Plaintiff had been taking the psychotropic medications
prescribed by Dr. Jafferany for almost a month.  (*See* TR 346.)  Plaintiff and his sister reported
that he had a slight response to the treatment and was doing slightly better.  He reportedly
continued to feel paranoid and described signs and symptoms of psychotic process, but his
symptoms were less frequent, and he was considered to be better.  On exam, Dr. Jafferany reported
that Plaintiff exhibited no serious mental status abnormalities, hallucinations and delusions were
not present, his behavior was generally appropriate, his thinking was logical, his thought content
was appropriate, there were no signs of anxiety, his attention span was normal, and his judgment
and insight appeared to be intact.  Conversely, when Plaintiff treated with Dr. Jafferany a month
later, he hadn't been taking his medication regularly, and he presented as guarded, inattentive,
uncommunicative and anxious.  (TR 342.)  It was also reported that his symptoms had increased
in frequency and intensity, and he was considered to be worse.

While the evidence cited by Plaintiff shows that he did still report some symptoms when
he was compliant with his medications, as the ALJ reasoned when discounting Dr. Royal's

opinion, the evidence shows that those symptoms became "quite mild." (*See* TR 26.) Thus, the ALJ reasonably gave Dr. Royal's opinion only some weight on the basis that he did not have an opportunity to observe Plaintiff while he was compliant with his medications. Plaintiff's Motion should be denied in this regard.

### 4.    The ALJ's Assessment of Plaintiff's Mental RFC

Plaintiff argues that while the ALJ found that Plaintiff has severe mental impairments of schizophrenia and depression with psychotic features, the ALJ's RFC assessment does not account for the impact of those impairments on his functional ability as is required by SSR 96-8p and SSR 85-15. (Docket no. 18 at 18-21.) SSR 96-8p requires that a claimant's non-exertional capacity, including his or her mental limitations, "be expressed in terms of work-related functions." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). SSR 96-8p further notes that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id*.; *see also* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). Here, the ALJ accounted for Plaintiff's mental impairments by limiting him to performing simple, routine, repetitive tasks involving only simple work-related decision making, only occasional changes in the work place, and work where there is little to no contact with the public, minimal, superficial contact with coworkers, and occasional contact with supervisors. (TR 25.) Thus, Plaintiff is incorrect.

The substantive arguments that Plaintiff makes in this portion of his brief relate to the ALJ's consideration of the VE's testimony and the opinion of the non-examining state-agency physician. (Docket no. 18 at 19-21.) He argues that the ALJ fails to address the testimony of VE

Michelle Ross, who testified that an individual would be unable to perform the jobs she described

if he could have no interaction with the public, less than occasional interaction with supervisors,

required frequent supervision and redirection, and would be off-task more than twenty percent of

the day.  (*Id.* at 19-20 (citing TR 83-90).)  As Defendant argues, however, VE Ross's testimony in

this regard is irrelevant, because the ALJ did not assess those limitations as part of Plaintiff's RFC.

(*See* docket no. 21 at 20.)

    While not explicitly stated, Plaintiff seemingly argues that the validity of the ALJ's RFC

assessment is dependent on the VE's testimony.  The Sixth Circuit has previously addressed and

rejected this concept in a similar case, stating:

> That is not how the system operates. The RFC is based on the claimant's particular
> disabilities, an inquiry wholly independent from what jobs are available in the
> regional and national economy. *See* 20 C.F.R. § 404.1545(a) (listing factors that
> determine an RFC). The VE does not testify as to what the claimant is physically
> capable of doing, but rather as to what jobs are available, given the claimant's
> physical capabilities. Thus, in a step-five analysis, the VE's testimony depends
> upon the RFC and not the other way around.

*Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36 (6th Cir. 2010) (citation omitted).

    Here, ALJ weighed the medical and non-medical evidence in conjunction with Plaintiff's

subjective complaints and developed an RFC based on the evidence that he found to be

consistent with and supported by the record.  The ALJ then included all of the limitations of the

RFC in his hypothetical questions to VE Ross, and she testified that there were jobs

available for a person with those limitations, which she cited in detail.  (TR 84-86.)   The  ALJ

then properly relied on the VE Ross's testimony to determine that there are significant numbers of

jobs available that Plaintiff can perform.  Plaintiff's argument fails in this regard.

    The state-agency physician, Barbara Jones-Smith, Ph.D., opined that Plaintiff was able to

perform one- and two-step tasks on a sustained basis.  (TR 99-101.)  The ALJ found that Dr. Jones-

Smith's opinion was consistent with Plaintiff's treatment notes, which demonstrated significant improvement in Plaintiff's mental health symptoms when he was compliant with medication, and the ALJ assigned considerable weight to her opinion. (TR 28.)

Plaintiff argues that Dr. Jones-Smith only performed a one-time, limited examination of Plaintiff and that it would therefore be erroneous to give her opinion greater weight than the opinions of Dr. Royal, Plaintiff's treating physicians, or Plaintiff's sisters, who he lives and interacts with on a regular basis. (Docket no. 18 at 20-21.) But Dr. Jones-Smith did not examine Plaintiff as he inexplicitly asserts; Dr. Jones-Smith is a *non-examining* state-agency physician. Generally, the opinion of a treating source is entitled to greater weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(c). However, the Social Security Administration has instructed that opinions from state-agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances. SSR 96-6p, 1996 WL 374180, at *3.

In this case, the ALJ credited Dr. Jones-Smith's opinion on the basis that it is consistent with Plaintiff's longitudinal mental health record, which includes findings related to Plaintiff's improved condition after he started taking psychotropic medication. Conversely, Dr. Jafferany's limited opinion regarding Plaintiff's GAF score and Dr. Royal's opinion were rendered before Plaintiff started taking psychotropic medication. The greater consistency of Dr. Jones-Smith's opinion with the medical record than the opinions of Dr. Jafferany and Dr. Royal is an appropriate circumstance under which to assign it greater weight. It was also appropriate for the ALJ to assign greater weight to Dr. Jones-Smith's opinion than the opinions of Plaintiff's sisters, because opinions from acceptable medical sources are generally entitled to greater weight than opinions from non-medical sources. *See* SSR 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). The ALJ

did not err in his assessment of Dr. Jones-Smith's opinion.  For the above-stated reasons, this portion of Plaintiff's Motion should be denied.

5.     *The ALJ's Consideration of Plaintiff's Medication Side Effects*

Plaintiff argues that the ALJ failed to discuss, much less consider, the side effects of Plaintiff's medications.  (Docket no. 18 at 21-23.)  He argues that he and his sisters provided consistent and credible testimony regarding his medication side effects, which include drowsiness and confusion.  (*Id*. at 22.)  "The Sixth Circuit has held that the ALJ must evaluate '[t]he type, dosage, effectiveness, and side effects of any medication' as part of the process of determining the extent to which side effects impair a claimant's capacity to work."  *Morin v. Comm'r of Soc. Sec.*, 259 F. Supp. 3d 678, 683 (E.D. Mich. 2017) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi))).  A claimant's subjective "allegations of [a] medication's side-effects must be supported by objective medical evidence."  *Farhat v. Sec'y of Health & Human Servs.*, 972 F.2d 347 (Table), 1992 WL 174540, at *3 (6th Cir. 1992).

Contrary to Plaintiff's assertion, the ALJ did consider and explicitly discuss the side effects of Plaintiff's medications.  He acknowledged Ms. Coates's testimony that Plaintiff became very tired and confused when he took his medications.  (TR 29.)  The ALJ also indicated that Ms. Coates did not testify as to which specific medications caused the side effects.  (TR 29.)  Plaintiff argues that while this is true, it is "difficult and entirely irrelevant" to isolate or pinpoint exactly which of Plaintiff's numerous medications that he takes for his mental illnesses, hypertension, hyperlipidemia, pain, and diabetes cause the undesirable side effects.  (Docket no. 18 at 22.)  Plaintiff's argument holds some merit in this regard.

16

More importantly, however, the ALJ noted that the treatment notes from Dr. Nagarajan, Dr. Jafferany, and Dr. Jafferany's physician assistant did not indicate the significant medication side effects testified to by Ms. Coates. (TR 29.) As Defendant points out, Plaintiff denied side effects and/or none were observed at his doctor's appointments on December 31, 2014, May 18, 2015, and July 27, 2015, and on March 23, 2015, Dr. Jafferany noted that Plaintiff described no side effects and that none were in evidence except for mild tiredness. (Docket no. 21 at 21-22 (citing TR 344, 350, 352, 354).) Where a claimant testifies that he experiences medication side effects, but his medical records make no indication that the claimant reported medication side effects to his physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from his medications. *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) (citing *Steiner v. Sec'y of Health and Human Servs.,* 859 F.2d 1228, 1231 (6th Cir. 1987)). Accordingly, the ALJ did not err in his consideration of Plaintiff's medication side effects, or by discounting Ms. Coates's testimony regarding the same.

### 6. The ALJ's Assessment of the Lay Opinion Evidence

Plaintiff contends that the ALJ erred by failing to provide legitimate reasons for rejecting the hearing testimony and statements provided by his sisters, Ms. Coates and Kim Rogers. (Docket no. 18 at 23-24.) Pursuant to 20 C.F.R. §§ 404.1513 and 416.913, an ALJ "'may . . . use evidence from other sources,'" such as Plaintiff's sisters, "but there is no requirement that the ALJ do anything more than consider the other source evidence." *Mullins v. Comm'r of Soc. Sec.*, No. 2:14-CV-13288, 2015 WL 3441163, at *13 (E.D. Mich. May 28, 2015) (quoting 20 C.F.R. § 404.1513)); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). "In addition, 'testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians.'" *Id.* (quoting *Simons v. Barnhart,* 114 F. App'x 727, 733 (6th Cir. 2004)).

Here, the ALJ considered Plaintiff's sisters' testimony and statements at length and assigned limited weight to Ms. Coates's testimony and statements and some weight to Ms. Rogers's statements.  (TR 28-29.)  With regard to Ms. Coates, as discussed above, the ALJ properly discounted her testimony regarding the side effects of Plaintiff's medications as inconsistent with the medical treatment notes.  The ALJ also reasoned that the findings of the consultative physical examiner, Siva Sankaran, M.D., did not confirm the physical limitations alleged by Ms. Coates.  The ALJ also summarized Ms. Coates's testimony and statements regarding Plaintiff's behavior while he was not compliant with his medications and discounted that information on the basis that it was only indicative of Plaintiff's functioning while non-compliant.  Plaintiff argues that Ms. Coates testified that Plaintiff had been compliant with his medications over the previous few months, even though she had to force or trick him in to taking it.  (Docket no. 18 at 23-24 (citing TR 76-77).)  But the portion of Ms. Coates's testimony that Plaintiff cites in this regard suggests that Plaintiff was not regularly compliant.  Specifically, Ms. Coates testified that Plaintiff was "looking out of windows and doors all night unless [she could] trick him into taking his medicine."  (TR 76.)  Plaintiff also argues that the ALJ failed to clarify the dates of Plaintiff's non-compliance with his medication and erroneously concluded that Plaintiff had been non-compliant for a significant length of time.  (Docket no. 18 at 24.)  The ALJ came to no such conclusion in his assessment of Ms. Coates's statements and hearing testimony. Plaintiff's arguments fail with respect to Ms. Coates.

Similarly, the ALJ summarized the statements that Ms. Rogers offered regarding Plaintiff's functioning and found that they were inconsistent with Dr. Sankaran's physical examination.  (TR 28-29.)  He also reasoned that Ms. Rogers's statements regarding Plaintiff's mental functioning did not account for Plaintiff's significantly improved symptoms when Plaintiff chose to be

medication compliant.  Plaintiff argues that the ALJ's assessment runs afoul of "the requirement to seriously consider the observations and experiences of close family members as opposed to one-time, limited examinations as those provided by Dr. Sankaran."  (Docket no. 18 at 24.)  Plaintiff misstates the requirements for assessing opinions from other non-medical sources; nowhere do the regulations require an ALJ to give more consideration to the statements of a claimant's family members than to the opinion of an acceptable medical source.  Plaintiff also argues that the medical opinions of Dr. Jafferany and Dr. Nagarajan are much more aligned with the testimony of Plaintiff and Ms. Rogers.  Dr. Nagarajan did not provide an opinion regarding Plaintiff's functional limitations, however.  And while Ms. Rogers's statements are aligned with the GAF score assigned by Dr. Jafferany, both Dr. Jafferany and Ms. Rogers issued their statements before Plaintiff started taking psychotropic medications.

Here, it is clear that the ALJ complied with his legal obligation to consider the statements and testimony of Plaintiff's sisters, which is all that he was required to do.  Plaintiff's Motion should therefore be denied in this regard.

### 7.   The ALJ's Consideration of Plaintiff's Depression and Bipolar Disorder

Plaintiff argues that the ALJ violated SSR 96-8p, which requires an ALJ to consider the impact of both severe and non-severe impairments on a claimant's ability to work.  (Docket no. 18 at 25-26.)  Specifically, Plaintiff asserts that the ALJ failed to consider the effects of Plaintiff's depression and bi-polar disorder on Plaintiff's RFC.  (*Id*.)

Plaintiff bears the burden of proving the existence and severity of limitations caused by his impairments through step four of the sequential evaluation process.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Her*, 203 F.3d at 391.  Accordingly, it is Plaintiff's burden to

prove that he has a more restrictive RFC than that assessed by the ALJ.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*, 203 F.3d at 392).

 As noted above, the ALJ determined that Plaintiff has severe impairments of schizophrenia and depression.  As a result, the ALJ limited Plaintiff's mental RFC to simple, routine, repetitive tasks involving only simple work-related decision making, only occasional changes in the work place, and work where there is little to no contact with the public, minimal, superficial contact with coworkers, and occasional contact with supervisors.  (TR 25.)

 Plaintiff generally asserts that depression symptoms include agitation, becoming withdrawn or isolated, trouble concentrating, and trouble sleeping.  (Docket no. 18 at 25.) However, Plaintiff does not indicate, through citations to the record, factual or legal analysis, or even a conclusory statement that his depression actually causes these limitations.  Plaintiff does cite medical records to assert that his "well-established hallucinations and delusions" were left out of the ALJ's analysis, but he does not indicate what additional functional limitations the ALJ should have assessed to accommodate for his hallucinations and delusions.  With regard to bipolar disorder, Plaintiff generally alleges that it causes extreme mood swings that include emotional highs and lows.  Again, however, Plaintiff does not assert or cite evidence to show that he suffers from these limitations.  Plaintiff has therefore failed to meet his burden of proving that his depression and bipolar disorder require a more restrictive mental RFC than that assessed by the ALJ.

 Plaintiff also argues that the ALJ should have re-contacted "the consulting physician" to request additional evidence regarding the effects of Plaintiff's depression and bipolar disorder. (Docket no. 18 at 26.)  Plaintiff again cites 20 C.F.R. § 404.1512(e) in support of this argument, and it therefore fails for the same reasons as discussed in section one of this report and

recommendation.  Plaintiff has provided no substantive basis on which the ALJ should have re-contacted a medical source in this matter; moreover, Plaintiff does not specify which of the medical sources the ALJ should have re-contacted.  Plaintiff's argument should therefore be rejected.

> 8.    *Whether the Record Evidence Supports a Finding that Plaintiff Can Perform Sustained Work Activities*

Plaintiff argues that the "overwhelming weight of the evidence establishes the fact that Plaintiff is unable [to] maintain regular and continuous employment."  (Docket no. 18 at 26-27.)  In support of this argument, Plaintiff cites Ms. Coates's testimony that Plaintiff's recent attempts to secure employment were unsuccessful because he was hostile, uncooperative, and distrustful toward strangers.  He also argues that the medical evidence and lay testimony continuously confirms that he is unable to function around unfamiliar individuals and settings.  The ALJ accounted for these social limitations in Plaintiff's RFC by limiting Plaintiff to only occasional changes in the work place and work where there is little to no contact with the public, minimal, superficial contact with coworkers, and occasional contact with supervisors.  (TR 25.)  Plaintiff further argues that he has a limited range of motion and chronic pain as a result of his gun-shot wounds.  The ALJ accounted for these symptoms by assessing functional limitations regarding Plaintiff's right upper extremity in the RFC.

Additionally, Plaintiff argues that even with medication compliance, he is regularly paranoid and easily distracted and that he exhibits confused and hypervigilant behavior.  (Docket no. 18 at 27.)  Plaintiff cites records from Dr. Royal's examination in support of this argument, which was performed before Plaintiff started taking psychotropic medications.  Plaintiff also cites Dr. Jafferany's December 31, 2014 treatment note in support of this argument.  The undersigned addressed the same argument regarding Dr. Jafferany's treatment note in section three of this report and recommendation.  Essentially, Plaintiff and his sister reported continued but improved

symptoms of paranoia and psychotic process while taking medication, but the mental examination performed by Dr. Jafferany was normal.

Therefore, the ALJ primarily based his decision on Plaintiff's condition when he was compliant with medication:

> The medical evidence of record clearly demonstrates that the claimant has functional limitations arising from his severe mental impairments. However, the record shows that the claimant has a history of non-compliance with psychotropic medications. The testimony of the claimant and Ms. Coates, the claimant's sister, affirmed that the claimant is generally non-compliant with taking any prescribed medications. Although the claimant has some mental functional limitations, the record indicates that the claimant's mental health symptoms dramatically improve when the claimant is compliant with psychotropic medication therapy.
>
> . . . .
>
> The testimony of the claimant, Ms. Coates, and the objective medical evidence clearly demonstrates that the claimant's mental health symptoms greatly improve when he is compliant with psychotropic medication therapy. The undersigned cannot find the claimant disabled based upon worsening symptoms due to the claimant's non-compliance with mental health treatment. Based on the totality of the evidence, the undersigned finds that the claimant retains the ability to perform simple, unskilled work with minimal contact with others (as stated in the residual functional capacity above). When the claimant is compliant with medications, it is clear that he has the capacity to perform work.

(TR 25-26, 27.)

The regulations provide that a claimant must follow the treatment prescribed by his medical source(s) if the treatment is expected to restore his ability to work. 20 C.F.R. § 416.930(a). If a claimant does not follow the prescribed treatment without a good reason, the Social Security Administration will not find him disabled. 20 C.F.R. § 416.930(b). The ALJ's decision accords with these regulations and is based on the substantial treatment evidence of Plaintiff's improved symptoms while compliant with medication. The ALJ's decision should not be disturbed.

## VI.      CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 18) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 21).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  February 1, 2019              s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 1, 2019              s/ Leanne Hosking
                                      Case Manager